224 F.Supp. 909 (1963)
HUMBLE OIL & REFINING COMPANY, a Corporation, and Esso, Incorporated, a Corporation,
v.
AMERICAN OIL COMPANY, a Corporation, and Standard Oil Company, a Corporation.
No. 63 C 251 (2).
United States District Court E. D. Missouri, E. D.
December 11, 1963.
Walter R. Mayne, Nelson W. Hartman and Thomas R. Schwarz, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., Forrest M. Darrough and Dillard Baker, Houston, Tex., Francis X. Clair, New York City, Gerrit P. Groen, Dean A. Olds and Jerome Gilson, of Byron, Hume, Groen & Clement, Chicago, Ill., Daphne Leeds, Washington, D. C., for plaintiffs.
Coburn, Croft & Cook, St. Louis, Mo., Richard J. Farrell, L. B. Lea, and Ernest Godshalk, Chicago, Ill., for defendants.
MEREDITH, District Judge.
Plaintiff corporations, Humble Oil & Refining Company and Esso, Incorporated, have filed against defendant corporations, *910 American Oil Company and Standard Oil Company (of Indiana) a complaint seeking modification of a 1937 decree of this Court in Standard Oil Company v. Esso, Inc., et al., civil action No. 11,407, affirmed in 1938, sub nom. Esso, Inc. v. Standard Oil Co., (C.A.8th) 98 F.2d 1. The 1937 decree enjoined Standard Oil of New Jersey and Esso, Inc., and other defendants therein, from using various terms, including "Esso", "Standard Oil Company", "Standard", "Soco" and "SO", in fourteen states in the midwest. During that litigation, Edward S. Rogers was counsel for Standard Oil of New Jersey and Esso, Inc., defendants therein, the latter being a plaintiff in the present action. Among attorneys representing defendants, including Standard Oil Company (of Indiana), plaintiff in the former action, is the firm of Woodson, Pattishall & Garner of Chicago, the successor firm to Rogers & Woodson of Chicago. Plaintiffs have moved, by reason of Canon 6 and Canon 37 of the Code of Ethics of the American Bar Association and the similar provisions for the Missouri Bar found in Missouri Supreme Court Rules §§ 4.06, 4.37, V.A. M.R., to disqualify the firm of Woodson, Pattishall & Garner from representing defendants. There has been a hearing wherein Mr. Woodson, Mr. Pattishall and Mr. L. B. Lea, assistant counsel of Standard Oil Company (of Indiana) have given testimony. Affidavits of both parties are also before the Court. This memorandum contains our findings of facts and conclusions of law.
It appears that this Court has inherent power to control its injunctive decrees where changing circumstances warrant. United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999. Jurisdiction is also present on the basis of diversity of citizenship and the requisite amount in controversy.
Insofar as our research has been able to determine, the application of Canons 6 and 37 in a motion to disqualify counsel is one of first impression in the district courts of the Eighth Circuit.
There have been a series of cases in the Second Circuit Court of Appeals involving the ill-fated firm of Isaacson and Malkan and its equally ill-fated successor, Malkan and Ellner. Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, 224 F.2d 824, cert. den., 350 U.S. 932, 76 S.Ct. 300, 100 L.Ed. 814; Fisher Studio v. Loew's Incorporated, 232 F.2d 199; Harmar Drive-In Theatre v. Warner Bros. Pictures, 239 F.2d 555. The original factual situation from which those cases stemmed is a stranger to the instant circumstance in that there is no question in the opinion of this Court as to the professional ethics of the lawyers who are objects of the motion to disqualify nor of the good faith of the lawyers who on behalf of their clients seek disqualification. The lawyers differ strenuously in their views on this ethical question and the Court itself has found the question extremely difficult.
We only wish to emphasize that references to the Second Circuit cases above do not suggest that the professional activities of the lawyers here involved are at all analogous to the underlying factual situation from which the aforementioned cases arose. However, the basic considerations set forth in Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, supra, are clearly pertinent for it is there demonstrated that protecting and fostering the public's and the individual client's confidence in the lawyer as an arm of the Court is the basic consideration, but at the point where vicarious disqualification is pyramided on vicarious disqualification, it must be weighed against the client's convenience and interest in obtaining counsel for technical and special matters together with the confining effect too harsh rules will have on an attorney's professional practice.
However, it is our view that the following statement in Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, supra, at page 826, controls the decision in the instant motion:
"* * * all authorities agree that all members of a partnership are barred from participating in a case *911 from which one partner is disqualified. * * * And once a partner is thus vicariously disqualified for a particular case, the subsequent dissolution of the partnership cannot cure his ineligibility to act as counsel in that case." (Emphasis added and citations omitted.)
In the instant case, it is a fact that Edward S. Rogers was principal counsel for Standard Oil of New Jersey and for Esso, Incorporated, in the 1937 action in which he was contending that the injunction should not issue while Standard Oil Company of Indiana, defendants here, sought the issuance of the injunction. Edward S. Rogers was a member of both a Chicago and a New York firm. Each firm operated independently of the other and had its own clientele. Neither shared in the profits of the other nor was responsible for the obligations or losses of the other. The record shows that in the 1937 litigation, as counsel for "Esso" and "New Jersey", Edward S. Rogers' name appeared as counsel with a Chicago address. Neither the Chicago nor the New York firms of which he was a member are on the record of that case. His name, "Edward S. Rogers, of Chicago, Illinois", appears as counsel for appellant in Esso, Inc. v. Standard Oil Co., supra. Files on the case were maintained in the New York firm and were returned by that firm to Standard Oil Company of New Jersey in 1954. Considerable correspondence concerning the case was addressed to Rogers at the Chicago firm's address and Rogers performed part of the work in the Chicago firm's office. All the old files of the Chicago office were destroyed in 1957 and any files of the original Esso case maintained there were at that time destroyed. Fees for the 1937-1938 "Esso" representation were paid to the New York firm of which Rogers was a member. From the bulk fees received by the New York firm, certain payments were made to associates of Rogers in the Chicago firm, said payments amounting to the sum of approximately $750.00, of which sum $150.00 was on the books of the Chicago firm attributed to services performed by William T. Woodson.
From what we have stated we think it is apparent that there was access to confidential information and that some work was done for Esso, Inc., by Rogers' Chicago firm which included Mr. Woodson, who received only a small sum. However, it is the work done and the access to confidential information which is crucial in making the determination. Consolidated Theatres v. Warner Bros. Cir. Man. Corp., (C.A.2nd) 216 F.2d 920. Mr. Woodson now remembers nothing about his participation in that litigation. The affidavit of Cyril Pearson, who was in 1935-1938 Assistant Trademark Counsel for New Jersey, states that prior to, during and after the litigation in 1938 Rogers represented the interests of Standard Oil of New Jersey and Esso, Inc., and that Mr. Woodson was actively connected with the litigation. We think there is an inference that Mr. Woodson had some connection with Cause No. 11,407 by the fact that in March, 1963, Mr. Woodson, at the request of his present partners, Mr. Pattishall and Mr. Hostetter, in connection with a case they were trying for Standard Oil of Kentucky in which Cause No. 11,407 had come in issue, called Mr. Pearson, with whom he was on a first name basis, to seek an interview about an Esso trademark contract written by Pearson. The interview was refused when Pearson in the telephone conversation learned that Woodson was now representing Standard Oil of Kentucky against Humble Oil, a subsidiary of Standard Oil of New Jersey, unless approval was obtained from counsel for Standard Oil of New Jersey, obviously, in view of at least what was Pearson's opinion of Woodson's connection with the old case.
We have determined that it is clear that Rogers' Chicago firm was disqualified from representing an opposing interest of Standard Oil of New Jersey and Esso, Inc., in Cause No. 11,407, because there was access to confidential information and because even though small in amount, fees were paid to that firm. *912 It is also clear that Mr. Woodson, as a partner of Rogers in the Chicago firm, was disqualified.
In 1936 the firm name was Rogers, Woodson & Rogers, the latter partner being Edward S. Rogers' son. In 1942 Edward S. Rogers became chairman of the board of Sterling Drug Company and though not participating in the firm's profits himself, continued as an inactive partner who occasionally but regularly consulted with Woodson. In 1946 Beverly Pattishall joined the firm which was then known as Rogers & Woodson, although Woodson was the only active partner. Rogers was still an inactive partner but would come into the office from time to time and talk with the associates and members. In 1949 Rogers died and five years later, in 1954, the firm name was changed to Woodson, Pattishall & Garner. To date Rogers & Woodson continues to be listed in the biographical section of Martindale-Hubbell with a notation to see the biographical material under the firm of Woodson, Pattishall & Garner. There is no doubt that the present firm is the successor to the firm of Rogers & Woodson. The dissolution of a partnership, however, does not cure the disqualification in the same case. Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, supra.
In a situation where a lawyer, during trial of a cause, joined a firm which was disqualified from representing the new lawyer's client because of having previously represented his adversary, the lawyer was disqualified even though he had conducted the case at arm's length from his new firm. W. E. Bassett Company v. H. C. Cook Company, D.C., 201 F.Supp. 821, affirmed by the Second Circuit Court of Appeals, 302 F.2d 268.
As previously mentioned, Woodson, Pattishall & Garner recently has represented Standard Oil of Kentucky in the case of Humble Oil Co. v. Standard Oil of Kentucky, now pending in the United States District Court for the Southern District of Mississippi. There Humble seeks a declaratory judgment to declare its rights to use the trademark "Esso" in a five-state area under contracts between the adversaries. The defense there seeks by counterclaim an injunctive decree similar to the 1937 decree of this Court. Defendant here claims that plaintiff's failure to raise the question of Woodson, Pattishall & Garner's representation of Standard Oil of Kentucky in the Mississippi action is evidence of lack of valid belief on plaintiff's part that potential injury would result to plaintiff by that firm's representation in the instant case. While the 1937 decree of this Court has played apparently an important part in that litigation, still the parties are different and the factual situation is the same as in the instant action. Conversely, at least two parties, Esso, Inc., and Standard Oil of Indiana, are identical opponents as they were in the 1937 litigation. We cannot consider the failure of Humble to raise the issue in the pending litigation in Mississippi against Standard Oil of Kentucky as indicative of bad faith of plaintiffs here moving for disqualification. That factor, however, might bear on the convenience and interest of Standard Oil of Indiana in defending the present action had the present disqualification procedure reached the point of pyramiding vicarious disqualification on vicarious disqualification to an untenable degree. That, however, is not the situation here. The decisive factor in this disqualification is that this litigation, though predicated on changed circumstances subsequent to the entry of the 1937 decree in Standard Oil Company v. Esso, Inc. et al., Cause No. 11,407, affirmed sub nom. Esso, Inc. et al. v. Standard Oil Co., (8th C.A., 1938) 98 F.2d 1, involves at least two identical adversaries, litigating precisely the same issues, wherein one seeks modification of that injunction. In a word, it is for present purposes, the same case. If it were not so, the result would be otherwise. If it is to be tried, it deserves to be tried free of any suspicion of conflicting client interests on the part of the lawyers involved. Of necessity, the 1937 decree, its underlying factual basis, its effect and significance will be a pervading theme. *913 The occurrence that precipitated disqualification in W. E. Bassett Co. v. H. C. Cook Co., supra, already has arisen in the instant case in connection with the disqualification motion and the possibility of similar occurrences is not entirely remote. The firm of Woodson, Pattishall & Garner would have to take the position on behalf of Standard Oil of Indiana that the injunction was properly entered and should be continued in force, a position entirely inconsistent with the position taken by its former partner, Edward S. Rogers, and its present partner, William S. Woodson, to whatever extent he participated, on behalf of Esso, Inc., in resisting issuance of the injunction sought by Standard Oil of Indiana in Cause No. 11,407 before this Court.
The motion to disqualify the firm of Woodson, Pattishall & Garner will be sustained.