Deborah **ESTEP** et al.

v.

Herbert **JOHNSON** et al.

Civ. No. N-74-83.

United States District Court,
D. Connecticut.

Oct. 16, 1974.

John R. Williams, New Haven, Conn., for plaintiffs.

Frank M. Grazioso, New Haven, Conn., Robert E. Reilly, Corp. Counsel, West Haven, Conn., for defendants.

## MEMORANDUM OF DECISION ON PLAINTIFF ESTEP'S MOTION TO DISQUALIFY

NEWMAN, District Judge.

This motion to disqualify an attorney raises an apparently unresolved question of conflict of interest in the context of an OEO-funded legal services agency. The issue is whether a staff attorney and a member of the agency's board of directors may represent adverse parties in a lawsuit, and if not, what remedy is appropriate.

The motion is made by plaintiff Estep in a suit under 42 U.S.C. § 1983 against police officers and defendants Caccavale and Burr. Caccavale owns the building in which Estep rents an apartment. The complaint alleges that Caccavale and Burr, another tenant, conspired with the police officers to force Estep to vacate her apartment, and that the police officer perpetrated an unlawful search in furtherance of this scheme. Prior to the filing of this suit, Estep sought and secured representation from Attorney Francis X. Dineen in her efforts to resist eviction by Caccavale. Atty. Dineen is a staff attorney with

New Haven Legal Assistance Association (L.A.A.), an OEO-funded legal services agency. Atty. Dineen, though not representing Estep in this damage action, still represents her in her landlord-tenant dispute with Caccavale, which has become the subject of a suit in the state courts. In this Civil Rights Act suit, Attorney Frank M. Grazioso, a member of the Board of Directors of L.A.A., has entered an appearance for defendants Caccavale and Burr.

Estep's counsel in this suit contends that Dineen's representation of Estep in the landlord-tenant dispute is so intimately related to the pending suit as to create a conflict of interest between Dineen on one side and Grazioso on the other. He has moved for Grazioso's disqualification. Grazioso concedes that if he were Dineen's law partner, the relationship between the landlord-tenant dispute and the pending suit would disqualify him from acting in a capacity adverse to the interests of plaintiff Estep. He resists the motion, however, contending that an L.A.A. board member is not disqualified from representing interests adverse to those represented by an L.A.A. staff attorney.

■ The Court accepts the premise of the parties that the case should be considered as if Attys. Dineen and Grazioso were adversaries in the same litigation. They presently represent clients with adverse interests, and the adversity is involved in this suit. In such circumstances the possibility of a conflict of interest or at least its appearance is sufficiently real to make such representation inappropriate. Under the Code of Professional Responsibility, "A lawyer should exercise independent professional judgment on behalf of a client," (Canon 5) and "A lawyer should avoid even the appearance of impropriety." (Canon 9). There is a substantial risk that Dineen's ability to exercise independent professional judgment will appear to be compromised as long as a director of his board represents a client adverse to the interests of Dineen's client. If Estep's claims were settled,

it is entirely understandable that she would be suspicious that the board-member role of her adversaries' lawyer gave him some unwarranted advantage over her attorney.

■ Though the adversary relationship between the clients of the staff attorney and the board member requires some corrective action, the appropriate remedy is not necessarily limited to the latter's withdrawal of his appearance. The remedy should be determined by the nature of the problem that has arisen. If the adverse clients were represented by members of the same law firm, withdrawal from the litigation would be appropriate, Humble Oil & Refining Company et al. v. American Oil Company et al., 224 F.Supp. 909 (E.D. Mo.1963). Cf. W. E. Bassett Company v. H. C. Cook Company et al., 201 F. Supp. 821 (D.Conn.1961). The same result would follow if both attorneys were on the staff of the same legal services agency. Borden v. Borden, 277 A.2d 89 (D.C.App.1971). Those associated together in the practice of law, whether in a traditional law firm or a legal services agency, enjoy an intimate working relationship with each other. Within this relationship an attorney must feel entirely free to consult with his associates, to seek their professional advice, and to share with them the facts of a case on which helpful advice can be given. This opportunity for shared knowledge of a client's affairs lies at the heart of the conflict of interest when associated attorneys represent adverse interests. Of course, in the traditional law firm context there is also the threat to independent action that arises from the economic conflict of interest. See Code of Professional Responsibility, EC 5–21.

The relationship within a legal services agency of board member to staff attorney differs in important respects from the relationship between attorneys within a law firm or within a legal services agency. The critical difference is the absence of a general opportunity for shared knowledge by the board member

of the affairs of the staff attorney's client. In outlining ethical considerations governing the operation of legal services agencies, the Committee on Professional Responsibility of the American Bar Association has plainly stated:

> Once the attorney [of a legal services agency] has accepted a client or case of the nature and type sanctioned by board policy, the board must take special precautions not to interfere with its attorney's independent professional judgment in the handling of the matter. ABA Formal Opinion 324, p. 9 (August 9, 1970).

Thus the working relationship between associated attorneys in a law firm, which may well have a beneficial effect upon a lawyer's professional judgment when it is based on the wise counsel of an experienced colleague, is prohibited between a board member and a staff attorney.

It is true that the board members have some relationship with staff attorneys. In Borden v. Borden, *supra*, the District of Columbia Court of Appeals characterized the board as analogous to a law firm's managing partners, citing Formal Opinion 324. However, that Opinion was careful to limit the analogy. The Opinion acknowledged the board's authority over "broad policy matters" within the agency, such as criteria for clients' eligibility, type of services to be rendered, and priorities. The Opinion then observes:

> *In this regard,* the Board functions much like the managing or senior partners in a law firm except that the Board's role is expressly circumscribed by the Code to making broad, rather than narrow, policy decisions. Opinion 324, *supra*, p. 6. (Emphasis added).

This responsibility for broad policy formulation poses no general threat to the staff attorney's independence.

■ Two aspects of the board-staff relationship raise justifiable concerns.

First, there is a possibility in some instances of board inquiry about the staff attorney's case.

> The board may require staff attorneys to disclose to the board such information about their clients and cases as is reasonably necessary to determine whether the board's policies are being carried out. Opinion 324, *supra*, p. 9.

There is no claim or suggestion that an inquiry of this sort has occurred to date in connection with Atty. Dineen's representation of Estep. In the law firm context consultation among associated attorneys is so frequent and often so desirable that adverse representation is barred without proof of specific disclosures between attorneys. The board-staff relationship, however, contemplates such infrequent and narrowly defined inquiry that the mere possibility of disclosure ought not to incur the consequence of disqualification, though such a sanction would of course be obligatory if disclosure had occurred.

■ The second consideration arises from the board's economic authority over staff members in matters of salary and promotion. While the Court has not the slightest concern that Atty. Dineen's professional actions on behalf of his client would actually be influenced by the prospect of some adverse action by his board, nor any concern that Atty. Grazioso's actions on the board would actually be adverse because of litigation experience with a staff attorney, the matter cannot be dealt with in reliance on the integrity of the attorneys involved. It is this aspect of the board-staff relationship that creates concerns for the appearance of impropriety. It is one thing for Miss Estep and the public to understand that to date no disclosures have been made to the L.A.A. board. It is quite another to assure her and the public that the future course of her representation by a staff attorney might not in some subtle way be influenced by the board member status of her adversaries' lawyer.[1]

---

1. Atty. Grazioso has offered to disqualify himself from any consideration or action within the L.A.A. board that would affect Atty. Dineen. This suggestion does not sufficiently

With these considerations as to the nature of the problem in mind, it seems appropriate to formulate a remedy that gives Atty. Grazioso [2] the choice of either withdrawing his appearance for defendants Caccavale and Burr or withdrawing as a director of L.A.A. for a suitable period of time.[3] To date Atty. Grazioso's relationship to his clients and to L.A.A. has not impaired Atty. Dineen's capacity properly to represent Miss Estep, nor has an appearance of present impropriety been created. What causes concern is Atty. Grazioso's continued maintenance of relationships with both his clients and the board of L.A.A. The severing of either relationship sufficiently remedies the problem. Withdrawal from the board is an acceptable alternative to the normal sanction of disqualification from the case because it removes the relationship with Atty. Dineen that would otherwise create the appearance of impropriety.

Additional considerations prompt the use of an alternative remedy. Legal service agencies need the services of leading members of the bar on their boards of directors. Many firms have clients such as utility companies, department stores, or apartment house owners that may well become involved in litigation with clients represented by attorneys from legal services agencies. Members of these firms may be willing to serve on an agency board knowing that, if such litigation should arise, they will be required only to resign their board membership. But knowing that such litigation may prevent them from appearing for what may be a valued client,

even for one case, might well prompt them to decline board service in the first instance. While such a consideration would not justify permitting a conflict of interest to remain, the impact upon the profession has been considered in determining the scope of remedies to deal with a conflict situation. *Cf.* Laskey Bros. of West Virginia, Inc. v. Warner Bros. Pictures, 224 F.2d 824, 827 (2d Cir. 1955).

The impact upon the clients is also relevant. If the sole remedy were disqualification, defendants Caccavale and Burr would be denied the attorney of their choice. Furthermore, a conflict of interest between attorneys for adverse parties which is sufficient to require disqualification of one of those attorneys might also require the withdrawal of all other attorneys for both of the adverse parties. See Drinker, Legal Ethics, 106 n. 36 and accompanying text (1953). The impact of this consequence on a client in need of free legal services is obvious. Again, these considerations cannot prevent remedial action, but they ought to bear on the choice of remedies, so long as the alternatives laid down sufficiently deal with the particular problem that has arisen.

Accordingly, it is hereby ordered that within twenty days, Atty. Grazioso shall either withdraw his appearance for defendants Caccavale and Burr or submit to the Court suitable evidence of his resignation from the board of directors of New Haven Legal Assistance Association and his ineligibility to resume such board membership for a period of two years.

---

remove the appearance of impropriety that would inhere in the continued authority of Atty. Grazioso's fellow board members over Atty. Dineen.

2. Both sides appear to have assumed that if any remedy is appropriate, it is to be imposed with respect to Atty. Grazioso, perhaps on the theory that his appearance in this litigation occurred subsequent to Atty. Dineen's undertaking to represent Miss Estep. The order of appearance in the state court litigation is

not clear. In any event, especially in light of the alternative remedy being imposed, it seems appropriate to direct it solely at Atty. Grazioso. The option of withdrawal from the relationship with L.A.A. would have a far more serious impact upon Atty. Dineen than upon Atty. Grazioso.

3. A period of not less than two years would seem appropriate, especially in view of the frequent turnover among staff attorneys of legal services agencies.