EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

LUBY'S INC., a Delaware corporation,
Defendant.

No. CV 04–1094 PHX–DGC.

United States District Court,
D. Arizona.

Dec. 15, 2004.

Mary Joleen O'Neill, Esq., Sally Clifford Shanley, Michelle G. Marshall, C. Emanuel Smith, Phoenix, AZ, for Plaintiff.

Kent S. Brockelman, Esq., Kimberly A. Fatica, Esq., Brockelman Fatica PLC, Tempe, AZ, Terrence B. Robinson, Neel & Hooper, PC, Houston, TX, for Defendant.

## ORDER

CAMPBELL, District Judge.

Plaintiff–Intervenor Sally Case, represented by lawyers from the Arizona Center for Disability Law ("ACDL"), has filed a motion to disqualify attorney Kimberly Fatica and her law firm, Brockelman & Fatica, from representing Defendant Luby's in this case (Doc. # 24). The Court has reviewed the motion and its attachments, the response and attachments filed by special counsel for Luby's (Doc. # 34), and Ms. Case's reply memorandum (Doc. # 37). Oral argument is not necessary. For the reasons set forth below, the Court will deny the motion.

## Background

The Equal Employment Opportunity Commission ("EEOC") filed this action on May 27, 2004, alleging that Defendant Luby's had discriminated against Ms. Case on the basis of her disability. On August 9, 2004, Ms. Case moved to intervene as a Plaintiff. The Court granted the motion on August 18, 2004 (Doc. # 16).

The ACDL is a non-profit public-interest law firm designated by the Governor of Arizona to provide protection and advocacy services for people with developmental disabilities. The ACDL implements federal programs and receives federal funds for the protection of the disabled. The ACDL's volunteer board of directors ("Board") includes individuals with disabilities, family members of individuals with disabilities, and others who have experience or interest in disability law. The Board includes several attorneys.

The facts relevant to this motion are not disputed. Ms. Fatica served on the ACDL Board from May 2000 to August 2004, including service as vice president of the Board from June 2004 to August 2004. Ms. Fatica also served on the ACDL Legal Committee, which reviews litigation proposals. Ms. Fatica's law firm generally represents management interests in employment disputes. When Ms. Fatica joined the ACDL Board in 2000, she inquired about possible conflicts that might arise if clients of her firm were adverse to ACDL clients. She was advised by ACDL Executive Director Leslie Cohen that the organization had a screening policy to deal with such situations. Under that policy, an attorney Board member representing a party adverse to an ACDL client would be screened from any information relating to the case and would not participate in deliberations or decisions about the case.

During 2004, Ms. Fatica and her firm were asked to represent Luby's. On June 17, 2004, Ms. Fatica received an email from the ACDL indicating that staff attor-

neys would seek Board approval to commence litigation against Luby's on behalf of an ACDL client. Ms. Fatica deleted the email without reading it and promptly contacted Ms. Cohen, informing Ms. Cohen of her representation of Luby's and requesting that she be screened from all communications and information relating to the ACDL's representation of a party adverse to Luby's. Ms. Cohen agreed that any potential conflict problems could be avoided through the ACDL screening process. On this basis, Ms. Fatica agreed to represent Luby's in this case and began working on the matter in late June. She thereafter received no confidential information from the ACDL relating to this case and took no part in any Board discussion concerning the representation of Sally Case.

Staff attorneys for the ACDL later concluded that Ms. Fatica's representation of Luby's presented a conflict of interest. They suggested to Ms. Cohen that Ms. Fatica should be asked to withdraw from representing Luby's and, if she chose not to do so, that a motion for disqualification should be filed. Ms. Cohen did not agree. Rather, on August 25, 2004, she informed Ms. Fatica of the staff attorneys' concern and asked her to take one of several steps resign from the Board, take a leave of absence from the Board, or withdraw from the representation of Luby's. After considering the matter for two days, Ms. Fatica decided to resign from the Board.

Her resignation did not satisfy the ACDL staff attorneys. After seeking counsel from outside lawyers, discussing the matter internally, and asking Ms. Fatica to stop representing Luby's—a step Ms. Fatica declined to take—the ACDL attorneys filed this motion.

## Discussion

Several facts are key. They are not disputed by the parties.

■ First, Ms. Fatica has never had an attorney-client relationship with Sally Case. Ms. Case is represented by the ACDL staff attorneys, not by Ms. Fatica, her law firm, or other members of the Board. This not only is true as a factual matter in this case, it is generally recognized with respect to attorneys who serve on the boards of legal service organizations: "A lawyer who is an officer or a member of [a legal services] organization does not thereby have a client-lawyer relationship with persons served by the organization." ER 6.3 Comment [Effective Dec. 1, 2003], Rule 42 of the Rules of the Supreme Court of Arizona.[1]

Second, Ms. Fatica acquired no confidential information about Sally Case or her claims while serving on the ACDL Board. Although she was sent an email containing such information, she deleted the email and notified the ACDL that she should receive no such information. The ACDL does not claim that Ms. Fatica read the email or received other confidential information about Ms. Case.

Third, because she has resigned from the Board, Ms. Fatica will not receive any confidential information about Sally Case or her claim in the future. Ms. Fatica's resignation eliminates even the risk of inadvertent disclosure.

Fourth, the ACDL is not a party to this litigation. For purposes of this analysis, it must be remembered that Ms. Fatica's relationship was with the Plaintiff–Intervenor's law firm, not the Plaintiff–Intervenor herself.

■ These undisputed facts notwithstanding, the ACDL argues that Ms. Fati-

---

1. This Court has adopted the Arizona Rules of Professional Conduct as the relevant ethical code for civil and criminal litigation. *See* LRCiv 83.2(d).

ca faces a conflict of interest under ER 1.7 and ER 1.9. The Court does not agree.

ER 1.7(a)(1) is not implicated. Because she has never represented Sally Case, Ms. Fatica's defense of Luby's does not present a concurrent conflict of interest as recognized in ER 1.7(a)(1), where the representation of one client is directly adverse to another client.

The ACDL argues that Ms. Fatica's representation of Luby's is prohibited by ER 1.7(a)(2), which states that a lawyer may not represent a client if the representation of that client will be materially limited by the lawyer's responsibilities to "a third person"—in this case the ACDL. This concern, if it exists, belongs to Luby's, the only client of Ms. Fatica's involved in this litigation. Luby's is the only party that must worry about whether her representation will be limited by her responsibilities to the ACDL. Luby's has expressed no such concern and Ms. Fatica has asserted that Luby's is fully aware of her prior membership on the ACDL Board and has agreed to retain her for this matter.[2]

Nor does ER 1.9 apply. That rule prohibits a lawyer "who has formerly represented a client in a matter" from thereafter representing another person in the same or a substantially related matter if the person's interests would be materially adverse to the former client. Neither Sally Case nor the ACDL are Ms. Fatica's former clients.

The ACDL argues that these conclusions constitute a "hyper-technical reading" of ER 1.7 and ER 1.9 that ignores the basic prohibition against conflicts of interest. The ACDL asserts that Ms. Fatica had access to important information about attorneys' fees it has received in settlement of cases, information that might give Ms. Fatica insight into the ACDL's likely settlement position, including the extent of its willingness to compromise attorneys' fees. Similarly, the ACDL asserts that Ms. Fatica gained information about injunctive-type relief the ACDL often seeks in settlement as well as other information that might be relevant to the ACDL's litigation strategy. In other words, it is the information Ms. Fatica acquired about the ACDL, not about Sally Case or her claims, that forms the basis for this disqualification motion.

Although the Court does not doubt the sincerity of the ACDL attorneys in making this argument, the Court cannot agree that Ms. Fatica's access to this information requires her disqualification. The ethical rules specifically address a lawyer's service on the board of a legal services organization. ER 6.3 states that "[a] lawyer may serve as a director, officer or member of a legal services organization, apart from the law firm in which the lawyer practices, *notwithstanding that the organization serves persons having interests adverse to a client of the lawyer.*" (Emphasis added.) The ethical rule then specifically explains how such conflicts are to be handled: "The lawyer shall not knowingly participate in a decision or action of the organization: (a) if participating in the decision would be incompatible with the lawyer's obligations to a client under ER 1.7; or (b) where the decision could have a material adverse effect on the representation of a client of the organization whose interests are adverse to a client of the lawyer." Subpart (a) of this rule is designed to protect clients in the position of Luby's. Subpart (b) is designed to protect clients in the position of Sally Case, but does so by stating that the lawyer-director may not participate in

---

**2.** The ACDL's citation of the Restatement of the Law Governing Lawyers (Third) (2000) suffers from the same defect. Sections 121 and 135 provide protection to Luby's. The Court cannot conclude that they empower the ACDL to seek disqualification of Luby's counsel.

decisions that could have a material adverse effect on Sally Case. The rule does not state that lawyers are prohibited from representing clients adverse to Sally Case. Rather, it requires that lawyers adopt the kind of screening policy that was explained to Ms. Fatica when she joined the Board in May of 2000—the lawyer representing an adverse client must be screened from any Board information or decisions that could adversely effect the ACDL's client.

The ACDL acknowledges the existence of ER 6.3, but argues that it is a rule of recusal from Board deliberations, not a conflict of interest rule to govern disqualification motions. The Court might find this argument viable if the express conflict rules—ER 1.7 and ER 1.9—established a rule at odds with ER 6.3. For the reasons discussed above, however, they do not apply to this situation. The only authority contained in the ethical rules that applies directly to this case is ER 6.3. That rule reflects a strong policy in favor of lawyers serving on the boards of legal service organizations. It is designed to encourage such service, assuring lawyers that they will not be disqualified from representing clients adverse to the legal services organization, provided they exercise care not to acquire confidential information concerning the organization's client.

The ACDL's fundamental argument—that Ms. Fatica's access to general information concerning ACDL attorneys' fees and litigation strategies should disqualify her from representing Luby's—would nullify ER 6.3. Directors virtually always acquire this kind of information from the organizations they serve. If such information disqualified them from representing clients adverse to the organization's clients, ER 6.3 would have no meaning. Its stipulation that lawyer-directors must be screened from confidential information concerning specific organization clients would be entirely unnecessary because the lawyer-directors could not be adverse to such clients. Its concern in subpart (a) about their participating in decisions adverse to their own clients would be unnecessary because the lawyer-directors could not represent those clients. In short, the ACDL's position is fundamentally at odds with the provisions of ER 6.3, the ethical rule adopted by this Court to govern these situations.

Moreover, the ACDL's position would sweep more broadly than the rule that applies to law firms. If the ACDL was a traditional law firm, and if Ms. Fatica had been a partner in that firm rather than a director of a legal services organization, she could leave the law firm and represent Luby's in a case adverse to her former firm's client so long as she had obtained no confidential information about that client while at the firm. *See* ER 1.9(b). The fact that she might have substantial information about her former firm's finances or litigation strategies would not prohibit her representation of a client adverse to the firm's client. *Id.* If such general information does not disqualify a lawyer leaving a law firm, neither does it disqualify a lawyer leaving a director's position with a public service law firm like the ACDL. Cases recognize that the risk of compromised information is greater in law firms than legal services organizations and that the conflict rules generally are more strict for law firms. *See Estep v. Johnson*, 383 F.Supp. 1323, 1326 (D.Conn.1974).

This is not to say that the ACDL's concerns are entirely unfounded. There may be situations where a lawyer's service on the board of a legal services organization gives rise to a conflict. Indeed, cases cited by the parties have recognized this potential. A review of those cases, however, convinces the Court that this is not such a situation.

In *Estep*, a lawyer simultaneously served on the board of a legal services

organization and represented a client adverse to a client of the organization.[3] The court recognized the potential for a conflict of interest, but did not disqualify the lawyer-director from representing his client. Instead, the court concluded that conflict concerns could be resolved if the lawyer-director resigned from the organization's board for a reasonable period of time. *Id.* at 1327. In other words, the court settled on precisely the remedy that was implemented by Ms. Fatica in this case. The court found that such a remedy eliminated even the appearance of impropriety. *Id.*[4]

The ACDL relies heavily on *William H. Raley Co. v. Sup. Court*, 149 Cal.App.3d 1042, 197 Cal.Rptr. 232 (1983), a case in which the California Court of Appeals concluded that a law firm could not represent a plaintiff and at the same time have a partner sit on the board that controlled the defendant. The court's concern, however, focused on the partner's ongoing participation on the board and the risk that he might obtain confidential information about the defendant his law firm was suing. *Id.* at 236–37 ("ZoBell's ongoing dual status creates a risk of misappropriation of confidential information about Raley pertinent to Carroll's lawsuit."). Ms. Fatica's resignation from the ACDL Board eliminates any such risk in this case.

In *Berry v. Saline Mem. Hosp.*, 322 Ark. 182, 907 S.W.2d 736 (1995), the Arkansas Supreme Court disqualified a lawyer from representing a client adverse to a hospital even after the lawyer had resigned from the hospital's board of directors. The lawyer was not disqualified, however, simply because he formerly had been on the board or had obtained general information about the hospital's operations. He was disqualified because he had obtained information specifically related to the lawsuit in which he was now representing an adverse party. The court specifically noted that the lawyer, during his tenure on the board, had obtained information related to the issue being litigated and that the litigation involved issues "related to the very policies and procedures which [he] approved and implemented as a member of the board." *Id.* at 740. It is undisputed in this case that Ms. Fatica obtained no confidential information about Sally Case or her claim against Luby's.

Similarly, the lawyer in *Allen v. Academic Games Leagues of America, Inc.*, 831 F.Supp. 785 (C.D.Cal.1993), was disqualified from representing a client adverse to a company he formerly served as an advisor. The disqualification occurred because the lawyer had been directly involved in the litigation on behalf of the company and "took no steps to isolate himself from the litigation while he remained with the plaintiff corporation." *Id.* at 788. In this case, Ms. Fatica carefully avoided acquiring information about Sally Case, promptly deleting the only email she received about the litigation and then informing the ACDL that she should be screened from any future communications about the case.

## Conclusion

ER 6.3 makes clear that a lawyer in Ms. Fatica's position is not disqualified from

---

3. Although the lawyer-director and the organization's staff lawyers were involved in different lawsuits, the court in *Estep* recognized that the lawyer-director was effectively adverse to the organization's client and analyzed the case as though the lawyers were direct opponents in a single lawsuit. 383 F.Supp. at 1325.

4. It is worth noting that the concern of the court in *Estep* was that the lawyer-director might exercise undue influence over the staff attorney representing the organization's client. Given the obvious independence of the ACDL staff attorneys involved in this case, the Court has no concern that Ms. Fatica has exercised any undue influence over them.

representing Luby's if she screens herself from information related to Sally Case, as she did in this situation. The cases described above would support disqualification of Ms. Fatica if she continued to be a member of the ACDL Board with access to such information, or if she acquired such information before her resignation, but neither has occurred here. Ms. Fatica has taken the steps necessary to preserve her ability to represent Luby's.

**IT IS ORDERED:**

1. Plaintiff–Intervenor's Motion for Disqualification of Counsel (Doc. # 24) is **denied.**

2. All existing deadlines in this case shall remain in effect.