**Pamela Ann VEAZEY and T.E.V.,**
**Appellants,**

v.

**Thomas Marland VEAZEY, Appellee.**

**No. 2631.**

Supreme Court of Alaska.

Feb. 16, 1977.

---

James H. Holloway, Dillingham, for Pamela Ann Veazey, appellant.

Max F. Gruenberg, Jr., Anchorage, for T. E. V., appellant.

Sandra K. Saville, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, ERWIN and BURKE, JJ.

CONNOR, Justice.

This is an appeal from an order changing the custody of a 5-year-old girl from her

mother to her father.[1] We do not reach the merits of the competing custody claims, because we have concluded that the attorney appointed as the child's guardian ad litem should have been permitted to challenge the trial judge peremptorily. Therefore, we reverse and remand for consideration by a different superior court judge. We take this opportunity to offer guidance to the trial courts, and to attorneys appointed as guardians ad litem, concerning the proper role of such guardians in custody cases.

I

■ The motion to change custody was filed on April 29, 1975. On May 23, the court entered a pendente lite order which stated, among other things, that:

"Counsel for the parties have agreed and stipulated that MAX GRUENBERG shall be appointed as attorney for [T.E.V., the child], and his services shall be paid for by the Court. A subsequent order will be entered by this Court so appointing said attorney to represent the interests of [T.E.V.]."

On June 19, the court entered another order appointing Mr. Gruenberg "[i]n accordance with the Order entered May 23, 1975."

On June 25, Mr. Gruenberg moved for a change of judge as a matter of right pursuant to Civil Rule 42(c). The motion was denied as untimely. Rule 42(c)(3) states that "[w]here a party enters an action after the case has been assigned to a specific judge, a notice [of such a peremptory challenge] shall . . . be timely if filed . . . within five days after he appears or files a pleading in the action." Under Civil Rule 6(a), an intervening Sunday is

1. Justice Erwin, sitting as a single justice, has stayed the effect of the change of custody pending the disposition of this appeal.

2. It further provides that:

"Whenever two or more parties on a side have adverse or hostile interests, the presiding judge may allow additional changes of judge as a matter of right but each side shall have the right to the same number of such changes."

excluded from the 5-day period. Therefore, if T.E.V. first appeared through Mr. Gruenberg on June 19, the motion was timely. If the order of May 23 was the first appearance, the motion was correctly denied.

We conclude that she did not appear in the action until June 19. The May 23 order, in the form of a stipulation between parties already before the court that T.E.V. would appear through counsel, contemplated that there would be a subsequent order actually "appointing" Mr. Gruenberg. There was in fact such an order. It was not unreasonable for Mr. Gruenberg to await that subsequent order before filing the motion on behalf of his client. Until the latter order, he was not officially appointed. We therefore hold that it was error to deny the peremptory challenge as untimely.

■ Appellee Thomas Veazey raises a second argument in support of the trial court's denial of the motion. Under Rule 42(c)(1), "each side is entitled as a matter of right to a change of one judge . . . ." The rule goes on to state that for these purposes an action has only two sides, even if there are multiple parties.[2] Since Mr. Gruenberg eventually advocated the same position as Pamela Veazey, it is urged that he must be aligned on her "side" for purposes of Rule 42. Pamela filed an affidavit of disqualification on June 11, which was also denied. Thomas claims that is the one change to which the "side" was entitled. But the rule states that each "side" is entitled to one *change* of judge, not merely to make one such motion. Pamela's motion was denied, so her "side" had not obtained the single change of judge to which it was entitled, and it was available to T.E.V.'s counsel when he entered the action.

Appellants do not rely on this provision, and we need not decide whether on the facts of this case it would support their position. There may be child custody cases, however, in which the guardian ad litem adopts a position different from any of the custody claimants. In such cases, this rule may entitle the guardian to a peremptory challenge in addition to those available to the parties.

## II

■ Finally, Thomas claims that a guardian ad litem is not entitled to make a motion for change of judge. In connection with this issue, all parties to this action invite us to offer guidance to the bench and bar concerning the proper role of guardians ad litem in child custody cases. We have elected to do so, and conclude that a guardian is entitled to file such procedural motions on the same basis as a party to the action.

### The Appointment of Guardians Ad Litem

AS 09.65.130 gives the trial court discretion to appoint an attorney or guardian ad litem for a child in a proceeding "with respect to his custody, support, and visitation or in any other legal proceeding involving his welfare." *See also* Civil Rule 17(b); Children's Rule 11(a). The frequent need for an attorney or guardian ad litem to represent the child or children in their parents' divorce proceeding is the subject of a rapidly growing body of literature, unanimously favorable to such appointments.[3]

The threshold question of when it is appropriate for the trial court to appoint a guardian is not before us. Here the court and counsel for both parents agreed to the appointment of Mr. Gruenberg as guardian ad litem. But there will be many custody cases in which a guardian will not be needed, and in such cases neither the statute, the court rules, nor our decisions compel the court to waste its time and money, as well as that of the parties and counsel, in employing one. Some of our previous opinions have dealt with the exercise of trial court discretion on this question.

In *Lacy v. Lacy*, 553 P.2d 928, 930 (Alaska 1976), we suggested some of the factors which are relevant in deciding whether a guardian ad litem is necessary.

> "The decision whether to appoint a guardian ad litem would appear to depend in large measure on the age of the children and the nature of the claim being advanced by the parent or parents." *Id.* (footnote omitted)

On the facts of that case, we held it was not an abuse of discretion to fail to appoint a guardian. The children were teenagers who expressed a strong preference to live with their father. Neither parent claimed the other was unfit, nor sought to introduce expert medical or psychiatric testimony.

On the other hand, in *Carle v. Carle*, 503 P.2d 1050 (Alaska 1972), the judge was required to decide between placing a seven-year-old boy in his father's home with his extended family in a native fishing village, or placing him in the mother's urban home. In remanding, we suggested that the multicultural element might make a guardian ad litem useful in the court's further consideration of the case.

■ We cannot lay down a definite rule for guiding the trial courts in their decision whether to appoint guardians ad litem. No two child custody cases are alike. Of necessity, the trial court has a considerable amount of discretion in making this decision. The fact that one or all of the custody claimants favor or oppose the appointment is not necessarily conclusive. In *Lacy* and *Carle, supra,* and *In re P.N.,* 533 P.2d 13, 17–18 (Alaska 1975) (dependency proceeding), we have offered the trial courts some guidance on the question.

### The Duties of the Guardian Ad Litem

We now address the more difficult legal question of the proper role of such a repre-

---

3. *See, e. g.,* Bersoff, Representation for Children in Custody Decisions, 15 J.Fam.L. 27 (1976–77); Foster & Freed, A Bill of Rights for Children, 6 Fam.L.Q. 343, 355–57 (1972); Genden, Separate Legal Representation for Children, 11 Harv.C.R.–C.L.L.Rev. 565 (1976); Hansen, Guardians Ad Litem in Divorce and Custody Cases, 4 J.Fam.L. 181 (1964); Hansen, The Role and Rights of Children in Divorce Actions, 6 J.Fam.L. 1 (1966); Inker & Perretta, A Child's Right to Counsel in Custody Cases, 5 Fam.L.Q. 108 (1971); Kleinfeld, The Balance of Power Among Infants, their Parents and the State, 4 Fam.L.Q. 320 (1970); Note, A Child's Due Process Right to Counsel in Divorce Custody Proceedings, 27 Hastings L.J. 917 (1976); Comment, The Role of the Child's Wishes in California Custody Proceedings, 6 U.C.D.L.Rev. 332 (1973).

sentative, when the trial court has decided to appoint one. We have previously explored the responsibilities of a minor's attorney in *Wagstaff v. Superior Court*, 535 P.2d 1220, 1226–27 (Alaska 1975) (dependency), and *RLR v. State*, 487 P.2d 27, 33–35 (Alaska 1971) (delinquency). We are aware that answers do not come easily in this area of the law. This is, after all, a subject which taxed the wisdom of Solomon. 1 Kings 3:16–28.

Although the parties in this case did not discuss the issue in their briefs, at oral argument they presented two very different views of what a guardian ad litem should do.

The guardian who represented the child in this case asserted that the guardian should, like any other attorney, be a vigorous advocate of the position of his client, bound by the canons of professional responsibility to represent the child zealously and to the best of his ability.

Counsel for appellee Thomas Veazey urged that the guardian should be more in the nature of an expert investigator and adviser to the court. According to appellee the guardian should investigate the facts, interview the persons involved, and make a recommendation to the court based on his view of the best interests of the child. Under this view the guardian should not take an active part in the hearing or cross-examine witnesses.

■■ We begin our consideration by recalling the standards which guide the court in custody determinations. Between parents, custody is to be awarded according to the best interests of the child. The court may consider the child's preference, if the child is of sufficient age and intelligence. AS 09.55.205. Between a parent and a non-parent, the parent is to be preferred unless

placing custody with him or her would be detrimental to the child. *Turner v. Pannick*, 540 P.2d 1051, 1055 (Alaska 1975); accord, Cal.Civ. Code § 4600 (West Supp. 1976); *In re B.G.*, 11 Cal.3d 679, 114 Cal. Rptr. 444, 455–458, 523 P.2d 244, 255–58 (Cal.1974). The best interests of the parent, or detriment to the parent, are not the test.

■ The literature discussing the detrimental effects parental divorce can have on children is large and growing. It lends credence to the old sayings that as the twig is bent, so will the tree be inclined, and that the child is father of the man. A child may often carry with him for the rest of his life—more than half a century—the effects of a court's custody award. Numerous studies are cited in Note, *supra*, 27 Hastings L.J. at 918–19; Kleinfeld, *supra*, 4 Fam. L.Q. at 329–31, 335–36; and Bersoff, *supra*, 15 J.Fam.L. at 28 n.8. *See also* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* 7, 111 (1973);[4] Watson, The Children of Armageddon, 21 Syracuse L.Rev. 55 (1969). Although custody decisions are modifiable, not permanent (AS 09.55.205, AS 09.55.220), the harm done to a small child by even a short period of time in an unsuitable environment is not easily undone. Modification, with its costs in emotional trauma as well as money, is no substitute for making the best decision in the first instance.[5] *Nichols v. Nichols*, 516 P.2d 732, 735–36 (Alaska 1973); see H. Clark, *The Law of Domestic Relations in the United States* § 17.7, at 600 (1968); Bodenheimer, The Rights of Children and the Crisis in Custody Litigation, 46 U.Colo.L.Rev. 495, 498–99 (1975). *See generally* J. Goldstein *et al., supra, passim*. All these considerations impel us to conclude that the child is the person most interested in litigation over his custody, even though his name is not on the caption of the pleadings, which indicate

---

4. This book proposes a number of major and controversial changes in the law of child custody. Our citations to it, and our conclusion in this case which is in accord with one of its recommendations, should not be construed as an endorsement of its other recommendations.

5. Modification of a custody decree ordinarily, if not always, requires a showing of changed circumstances since the entry of the original decree. *King v. King*, 477 P.2d 356, 359–60 (Alaska 1970).

that formally the litigation is between his parents.[6]

■ From this, we have concluded that a guardian ad litem appointed pursuant to AS 09.65.130 is in every sense the child's attorney, with not only the power but the responsibility to represent his client zealously and to the best of his ability. Code of Prof. Responsibility, EC 5–1, EC 7–1. Like any other attorney he should, upon appointment, investigate the facts thoroughly, a responsibility which ordinarily should include home visits and a private interview with the child with no one else present.

When he feels it necessary, he should consult with non-legal experts—psychologists, social workers, physicians, school officials, and others. He should exercise his best professional judgment on what disposition would further the best interests of the child, his client, and at the hearing vigorously advocate that position before the court. With this responsibility necessarily goes the power to conduct discovery, to subpoena witnesses and present their testimony, to cross-examine witnesses called by other parties, and to argue his position to the court.[7]

**6.** "In making his determinations as to what conditions of a divorce judgment would best serve the interests of the children involved, the trial court does not function solely as an arbiter between two private parties. Rather, in his role as a family court, the trial court represents the interests of society in promoting the stability and best interests of the family. It is his task to determine what provisions and terms would best guarantee an opportunity for the children involved to grow to mature and responsible citizens, regardless of the desires of the respective parties. This power, vested in the family court, reflects a recognition that children involved in a divorce are always disadvantaged parties and that the law must take affirmative steps to protect their welfare."
*Kritzik v. Kritzik*, 21 Wis.2d 442, 124 N.W.2d 581, 585 (1963)(footnote omitted).
To adopt a metaphor used by the Wisconsin court in another case, the child ought to be treated as a player, not as the football, in the game of life. *Weichman v. Weichman*, 50 Wis.2d 731, 184 N.W.2d 882, 885 (1971).

**7.** This statement of the duties of a guardian ad litem has been constructed in part with reference to a procedural guide for guardians ad litem developed by the bench and bar in Dane County, Wisconsin, a copy of which is given to every guardian there upon appointment. We set it forth in full, as it appears in 2 Fam.L. Rptr. 2098–99 (1975):
"Preamble: By selecting you to serve as Guardian ad Litem in a custody case, the Court is demonstrating a trust in your ability to work steadfastly and impartially toward determining the best interests of the children involved. Everyone concerned in the case should be motivated toward resolving this issue with a minimum of disruption and trauma to the children.
"The role of the G.A.L. is to arrive at an independent determination of what is best for his wards. In arriving at his determination, the G.A.L. should utilize all the resources provided by the Court, but he should also avail himself of personal and separate re-

sources. His final recommendation should be based on his own observations combined with the input afforded him from other sources. The trust accorded you includes confidence in your ability to properly perform your function without unduly straining the economic resources available for your reimbursement.
"APPOINTMENT AS G.A.L. IN A FAMILY COURT CASE
"1. Read the Court file and sign the order accepting the appointment as G.A.L.
"2. Contact Family Court Counseling . . . and determine from the secretary which counselor is working in this case.
"3. Confer with the Family Court Counselor assigned to this case.
"4. Personally interview the parents, children, and/or custodian of the child.
"a. Interview each child privately.
"b. Include at least one home visit with advance notice to each home being considered.
"5. Interview people having contact with and knowledge of the child, (i. e. school personnel).
"6. Contact people knowing the parents or used as references by the parents.
"7. Exchange information with other professionals involved, (i. e. psychologists, social workers).
"8. Check back with Family Court Counselor before hearing.
"9. Prepare, for your own use, a tentative report of your conclusions and the basis for them. Determine from the Judge if he wants a copy of a written tentative report.
"10. Attend the hearing, being aware of the G.A.L.'s power to cross-examine witnesses, to subpoena witnesses, and to offer testimony. Be prepared to offer the Court a recommendation on the advisability of the children testifying or conferring with the Judge.
"11. At the close of the testimony, if necessary to properly determine the issue, re-

We note that the National Conference of Commissioners on Uniform State Laws has suggested a similar interpretation for § 310 of their Uniform Marriage and Divorce Act, a statute quite similar to AS 09.65.130. "The court may appoint an attorney to represent the interests of a minor or dependent child with respect to his support, custody, and visitation." Uniform Marriage and Divorce Act § 310. "The attorney is . . . an advocate whose role is to represent the child's interests." *Id.*, Commissioners' Note.[8] Guardians ad litem in the state of Wisconsin, where their appointment is mandatory in contested custody cases, *de Montigny v. de Montigny*, 70 Wis.2d 131, 233 N.W.2d 463 (1975), have similar powers and duties. *Id.*; Hansen, Guardians Ad Litem in Divorce and Custody Cases, 4 J.Fam.L. 181, 182 (1964).[9]

Appellee here urges that advocacy of the child's interest be left to the attorney for one or the other of the competing claimants, because there is only one ultimate issue in a custody case—the custody of the child—and a guardian ad litem will of necessity choose one claimant or the other. According to appellee, adding an additional advocate merely increases the cost and complexity of custody litigation without shedding any additional light on the facts and issues.

We disagree. The attorney for a claimant has a professional duty to exercise his judgment "solely for the benefit of his client and free of compromising influences and loyalties. . . . [T]he desires of third persons should [not] be permitted to dilute his loyalty to his client." Code of Prof. Responsibility, EC 5–1. In a number of instances, that attorney cannot assert the interests of the child without creating a conflict of interest. It was for this reason that in *Wagstaff, supra,* we rejected the

quest time to file a written report with copies to the parties and to the Family Court Commissioner.

"12. Determine with the Court whether you should be discharged before the time for appeal has passed.

"13. Should the outcome be adverse to what you believe are the best interests of the children, determine whether you as G.A.L. should appeal.

"CONSIDERATIONS IN DETERMINING CUSTODY

"A. The love, affection, and other emotional ties existing between the proposed custodians and the child.

"B. Assessment of the physical and mental health of the child and proposed custodians.

"C. The amount of time that proposed custodians will have available to devote to the child and the quality of their interaction with the child.

"D. Background of the proposed custodians.

"E. Home situation that would be created for the child by each proposed custodian.

"F. Proposed plan of the custodian for the care, supervision, and education of the child.

"G. Basic motivation for desiring custody.

"H. Child's wishes based on chronological age and emotional maturity of the child.

"I. History of the prior relationships of the proposed custodians with the child.

"J. Attitude toward visitation of non-custodial parent created by proposed custodial parent.

"K. The recommendations written or oral of trained social worker, Family Court Counselor, and that of a psychiatrist or psychologist if involved.

"L. The existing statutory and . . . case law as applied to this specific fact situation."

8. The Harvard Legislative Research Bureau's proposed Divorce Reform Act, developed in part by Andrew J. Kleinfeld, now a member of the Alaska Bar, would require that children be full parties, with appointed counsel assuming a full advocacy role, in divorce cases. Bureau Project, A Divorce Reform Act, 5 Harv.J.Legis. 563, 573–79, 582–85 (1968).

9. The Supreme Court of Wisconsin has been particularly cognizant of the needs of the children in divorce proceedings. *See, e. g., Wendland v. Wendland,* 29 Wis.2d 145, 138 N.W.2d 185 (1965) (custody); *Kritzik v. Kritzik,* 21 Wis.2d 442, 124 N.W.2d 581 (1963) (support); *Block v. Block,* 15 Wis.2d 291, 112 N.W.2d 923, 927 (1961) (visitation); as well as the *de Montigny* case cited in the text. The Wisconsin experience is reviewed in Podell, The "Why" Behind Appointing Guardians Ad Litem for Children in Divorce Proceedings, 57 Marquette L.Rev. 103 (1973).

We do not follow the decision of that court to require the appointment of guardians ad litem in all contested child custody cases.

argument that the parents had a right to select their child's attorney in a dependency proceeding. 535 P.2d at 1227. In *RLR, supra,* we noted similar considerations in a delinquency proceeding. 487 P.2d at 35.

The court's initial decision that a guardian ad litem is necessary in a particular case contains an implicit finding that the counsel for the parents cannot alone serve that child's interests before the court.

Furthermore, to say there is only one ultimate issue in a custody case oversimplifies the matter. The terms of custody, visitation, and support may vary greatly. None of those issues is of an "either-or" nature, and they are all of interest to the child. Shared or joint custody is sometimes awarded. *See, e. g., Priest v. Priest,* 90 Cal.App.2d 185, 202 P.2d 561 (1949); *Perotti v. Perotti,* 78 Misc.2d 131, 355 N.Y.S.2d 68 (Sup.Ct.1974) (excellent historical discussion); Annot., 92 A.L.R.2d 695 (1963); Note, Divided Custody of Children After Their Parents' Divorce, 8 J.Fam.L. 58 (1968). A guardian ad litem might advance such a proposal while counsel for each claimant advocates that sole custody be given to his client. The guardian ad litem might feel that none of the claimants before the court ought to have custody, and recommend some other disposition.

Cases in which there are more than two positions, represented before the court by more than two counsel, are not unusual in our courts. In ordinary civil litigation, we do not require that multiple plaintiffs or multiple defendants with differing interests, compromise among themselves and select one position and one attorney before coming into court.

We expect that many, though not all, guardians ad litem will do what Mr. Gruenberg, the guardian in this case, did—advocate that custody be given to one parent and not the other. If in his considered professional judgment that is best for his client, then that is the proper thing for him to do, and there is no warrant for criticizing him for his advocacy, as the trial court and appellee's counsel have done in this case. Of course, if the trial court concludes that,

in the circumstances of the case, the child's interests will be adequately protected without appointment of a guardian, he is under no obligation to appoint one. AS 09.65.130 makes the appointment discretionary. See pages 385–386 *supra.*

Unfortunately the custody of children is often merely another bargaining point between the divorcing parents, along with the questions of property division, spousal support, child support, and visitation. Divorcing parents seek, or decide not to seek, custody of their children for many different reasons, many of which may have little correlation with the best interests of the child. *See* Genden, *supra,* 11 Harv.C.R.–C.L.L.Rev. at 573; Kleinfeld, *supra,* 4 Fam. L.Q. at 330.

For all of these reasons, we have concluded that the advocate for the child in a custody dispute occupies a position unlike that of the advocates for either parent. When the court finds that a guardian is necessary, it is finding that a separate advocate for the child does not represent merely a purposeless duplication of effort.

We are aware of the special problems which face the attorney whose client is not sui juris. "The responsibilities of a lawyer may vary according to the intelligence, experience, mental condition or age of a client." Code of Prof. Responsibility, EC 7–11. Ethical Consideration 7–12 of the Code of Professional Responsibility sheds light on the duties of a lawyer with such a client, including the guardian ad litem of a child in a custody case:

> "Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer. Where an incompetent is acting through a guardian or other legal representative, a lawyer must look to such representative for those decisions which are normally the prerogative of the client to make. If a client under disability has no legal representative, his lawyer may be compelled in court proceedings to make decisions on behalf of the client. If

the client is capable of understanding the matter in question or of contributing to the advancement of his interests, regardless of whether he is legally disqualified from performing certain acts, the lawyer should obtain from him all possible aid. If the disability of a client and the lack of a legal representative compel the lawyer to make decisions for his client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of his client. But obviously a lawyer cannot perform any act or make any decision which the law requires his client to perform or make, either acting for himself if competent, or by a duly constituted representative if legally incompetent."

See generally Genden, supra, 11 Harv.C.R.–C.L.L.Rev. at 588–89, discussing specifically the representative of a child in custody proceedings.

 Specifically, AS 09.55.205(1) permits the court to consider the child's preference as one factor in the custody determination. Obviously, that preference may often weigh heavily in the guardian ad litem's decision on where he believes the best interests of his client lie. But it is equally plain that the guardian is not required to advocate whatever placement might seem preferable to a client of tender years. A young child may well prefer the less disciplined environment to the more disciplined one. He may prefer the parent who takes him on outings for recreational activities over the one who stays home to prepare his meals and keep the home clean.[10] But the guardian would be abdicating his responsibility to his client and the court to use his best professional judgment, were he to automatically recommend that young child's

preference without further scrutiny.[11] A child who has been living for some time with one parent might understandably select that parent, good or bad, because it represents the only home the child has ever known. This "psychological parenthood," while relevant, is not conclusive concerning what is in the child's best interests.

A child may have his thinking consciously or subconsciously colored by one parent against the other. The guardian ad litem must try to delve into this question and take all relevant factors into account regardless of what the child may or may not believe he "ought" to say. In the case at bar, the trial judge and an expert witness disagreed whether T.E.V. had been "coached" by her mother to say that she preferred to remain in her mother's custody.

We are aware that a disinterested expert is often useful in custody cases, as is a mediator or conciliation counselor. The judge who must decide custody often benefits from the services of a master or other person who investigates the circumstances and makes his findings known to the court.[12] Nor do we deny that the presence of a guardian ad litem may make custody hearings more prolonged and more expensive. However, we have concluded that when a child needs a guardian ad litem, he needs an advocate—someone who will plead *his* cause as forcefully as the attorneys for each competing custody claimant plead theirs. The basic premise of the adversary system is that the best decision will be reached if each interested person has his case presented by counsel of unquestionably undivided loyalty. There is no person more interested in a child custody dispute than

---

**10.** Such were the facts in *Moezie v. Moezie,* No. D 3535–71 (D.C.Superior Ct., Fam.Div., 1973), reprinted in K. Davidson, R. Ginsburg & H. Kay, *Text, Cases and Materials on Sex-Based Discrimination* 250, 252 (1974).

**11.** On the other hand, a relatively mature teenager's reasoned preference is not so lightly to be disregarded. The possibility of such a client's discharging counsel and selecting someone else more willing to advocate his own views, is a realistic one. For instance, in *Wag-*

*staff, supra,* attorney Wagstaff was apparently sought out and privately retained by his fourteen-year-old client J.T. 535 P.2d at 1222.

**12.** The Supreme Court of Wisconsin reached the same conclusion as do we—that such services are valuable supplements to, not a substitute for, an independent advocate for the child. *de Montigny v. de Montigny,* 70 Wis.2d 131, 233 N.W.2d 463, 468–69 (1975).

the child. His representative should act accordingly.

It follows from our discussion that the motion for peremptory challenge filed June 25, 1975 by counsel for T.E.V. should have been granted. Therefore, the order appealed from is reversed, and the case is remanded for consideration by a different superior court judge, assigned pursuant to Civil Rule 42(c)(5).