Christine FLORES, Petitioner,

v.

David FLORES, Respondent.

No. 3832

Supreme Court of Alaska.

July 13, 1979.

Max F. Gruenberg, Jr., and G. R. Esch-bacher, Anchorage, for petitioner.

Donald E. Clocksin and Lucinda McBur-ney, Alaska Legal Services, Anchorage, for respondent.

Dana Fabe, Asst. Public Defender and Brian Shortell, Public Defender, Anchorage, amicus curiae.

Before BOOCHEVER, C. J., and RABI-NOWITZ, CONNOR and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

This petition for review presents a single issue: whether an indigent party has the

right to court-appointed counsel in a private child custody proceeding in which her spouse is represented by Alaska Legal Services Corporation (ALSC). We hold that the due process clause of the Alaska Constitution [1] guarantees such a right.

The petition for review stems from a divorce proceeding in which custody of the couple's child is the only contested issue. The petitioner, Christine Flores, and the respondent, David Flores, are both indigent. Christine is a California resident and has evidently remained in that state throughout the time period relevant here. On or about November 18, 1976, David removed the couple's child from California to Alaska without Christine's consent. He subsequently obtained the services of ALSC and filed for divorce in Anchorage on December 20, 1976, but service was not made on Christine until April of 1977. In the interim, she obtained the services of the Legal Aid Society of Sacramento and filed for dissolution of the marriage in the Sacramento court on January 21, 1977. Service was made on David, and on March 18 the California court found that it had jurisdiction and granted interim custody to Christine. David subsequently obtained service on Christine and was awarded interim custody by an Anchorage court.

At that point, Christine's California counsel contacted a private Anchorage attorney who agreed to make a limited appearance for the sole purpose of requesting appointment of permanent counsel for Christine. An initial hearing was held on August 31, 1977, on a motion to join the Public Defender Agency as the real party in interest since Christine was attempting to require that agency to represent her in the divorce proceeding. It was stipulated that ALSC was unable to take conflicting sides of a divorce and that ALSC was without funds to hire a private attorney. The trial judge subsequently signed an order permitting service on the Public Defender.

A second hearing was held on November 14, 1977, at which an attorney from the Public Defender Agency was present as well as an ALSC attorney representing David Flores and the private attorney representing Christine Flores. The trial judge ruled that permanent counsel would not be appointed due to lack of funds and that the case should proceed with Christine unrepresented.

Petition for review of this ruling was made pursuant to Alaska Appellate Rules 23 [2] and 24,[3] and an entry of default in the divorce-child custody proceeding was stayed pending the outcome of the petition.[4]

We exercised our discretion by granting immediate review because of a substantial likelihood that injustice would result if normal appellate procedure were allowed to

---

1. Alaska Const. art. I, § 7.

2. Alaska R.App. P. 23(e) provides:
   An aggrieved party, including the State of Alaska, may petition this court as set forth in Rule 24 to be permitted to review any order or decision of the superior court, not otherwise appealable under Rule 5, in any action or proceeding, civil or criminal, as follows:

   .    .    .    .    .

   (e) Where postponement of review until normal appeal may be taken from a final judgment will result in injustice because of impairment of a legal right, or because of unnecessary delay, expense, hardship, or other related factors.

3. Alaska R.App. P. 24(a) specifies:
   A review is not a matter of right, but will be granted only: (1) where the order or decision sought to be reviewed is of such substance and importance as to justify deviation from the normal appellate procedure by way of appeal and to require the immediate attention of this court; or (2) where the sound policy behind the general rule of requiring appeals to be taken only from final judgments is outweighed by the claim of the individual case that justice demands a present and immediate review of a particular non-appealable order or decision; or (3) where the superior court has so far departed from the accepted and usual course of judicial proceedings, or so far sanctioned such a departure by an inferior court or administrative tribunal, as to call for this court's power of supervision and review.

4. Christine Flores is prevented by her indigency from travelling to Alaska to make a court appearance.

take its course.[5] Because of the petitioner's need for immediate representation, we entered an order requiring the superior court to appoint private counsel for her, indicating that an opinion would follow and that the order "is not intended to intimate the view of the court on the ultimate issues."

■ In holding that the due process clause of the Alaska Constitution [6] guarantees the right to counsel in this case, we recognize that the right is one usually associated with criminal proceedings. We also note, however, that this court has consistently avoided any formalistic categorization of proceedings as "criminal" and "civil" when determining if strict due process safeguards are required. "Due process is flexible, and the concept should be applied in a manner which is appropriate in the terms of the nature of the proceeding." [7] Thus we have previously held that the due process clause of the Alaska Constitution requires that counsel be provided for defendants in civil contempt proceedings, *Otton v. Zaborac*, 525 P.2d 537 (Alaska 1974), and in paternity suits, *Reynolds v. Kimmons*, 569 P.2d 799 (Alaska 1977), where the state supplies counsel to the mother.

The interest at stake in this case is one of the most basic of all civil liberties, the right to direct the upbringing of one's child.[8] This right has consistently been recognized by the United States Supreme Court as being among the "liberties" protected by the due process clause of the Federal Constitution. *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *May v. Anderson*, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Pierce v. Society of the Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925);

*Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923).

In *Reynolds*, we recognized the importance of the parent-child relationship. Although *Reynolds* was a paternity proceeding, we quoted with approval the decision of the Ninth Circuit in *Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974), which was a class action brought by indigent parents seeking injunctive relief and a declaratory judgment to the effect that whenever indigent parents become involved in child dependency proceedings, they are entitled to appointment of counsel. The court refused to adopt an inflexible rule that counsel was required in all child dependency proceedings, but it did hold the following:

> Parents are entitled to a judicial decision on the right to counsel in each case. The determination should be made with the understanding that *due process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or of prolonged separation from a child.*

*Id.* at 945 (footnote omitted) (emphasis added).

■ It is true that both *Reynolds* and *Cleaver* involved proceedings that were prosecuted by the state, but that does not remove the present case from the scope of their rationale. Although a private individual initiated the proceeding below, he was represented by counsel provided by a public agency. Fairness alone dictates that the petitioner should be entitled to a similar advantage. Furthermore, there is a strong state interest in divorce-child custody proceedings. Unlike commercial contracts, legally binding marriages and divorces are wholly creations of the state.[9] Any provi-

---

5. See note 2, *supra*.

6. "No person shall be deprived of life, liberty, or property, without due process of law." Alaska Const. art. I, § 7.

7. *Otton v. Zaborac*, 525 P.2d 537, 539 (Alaska 1974).

8. Although the divorce proceeding will not sever all parental rights of the petitioner, an award

of custody to the respondent will have the same consequences, due to the distance between California and Alaska and the petitioner's indigency.

9. For this reason, the United States Supreme Court in *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), held that divorce proceedings must meet due process requirements. In striking down state procedures

sion for child custody in a divorce order is fully enforceable by the state.[10] In this case, Christine Flores stands to lose a basic "liberty" just as surely as if she were being prosecuted for a criminal offense.

We have noted on previous occasions that "[c]hild custody determinations are among the most difficult in the law." [11] Although the legal issues in a given case may not be complex, the crucial determination of what will be best for the child can be an exceedingly difficult one as it requires a delicate process of balancing many complex and competing considerations that are unique to every case. A parent who is without the aid of counsel in marshalling and presenting the arguments in his favor will be at a decided and frequently decisive disadvantage which becomes even more apparent when one considers the emotional nature of child custody disputes, and the fact that all of the principals are likely to be distraught. This disadvantage is constitutionally impermissible where the other parent has an attorney supplied by a public agency.

In this case, the legal issues are much more complex than usual because of jurisdictional problems and because divorce proceedings are taking place in two states. Regardless of the complexity of the case, however, a denial of the right to counsel will necessarily be fatal to the petitioner's cause, because she lacks the funds to come to Alaska and will therefore lose the custody proceeding by default. Her right to be heard will truly be meaningless unless she is afforded the right to counsel.[12]

■ Having determined that there is a constitutional right to counsel in proceedings of this nature, it is necessary to further consider who will act as such and who will pay. Three sources from which counsel may be furnished have been suggested. They are ALSC, the Public Defender Agency, and the private bar.

ALSC contends that it cannot furnish attorneys to represent opposing sides in litigation. That conclusion follows if ALSC is viewed as an ordinary law firm to which the rule applies which bars all members of a firm from representing a client when one member of a firm has a conflict of interest.[13]

It is not, however, an inevitable conclusion that ALSC could not under any circumstances furnish counsel to take both sides of a case. Regulations might be developed relating to such matters as record keeping,

---

that required indigents seeking divorce to pay court fees and service-of-process costs, the Court reasoned:

> [W]e are unaware of any jurisdiction where private citizens may covenant for or dissolve marriages without state approval. Even where all substantive requirements are concededly met, we know of no instance where two consenting adults may divorce and mutually liberate themselves from the constraints of legal obligations that go with marriage, and more fundamentally the prohibition against remarriage, without invoking the State's judicial machinery.
>
> . . . Resort to the judicial process by these plaintiffs is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court. For both groups this process is not only the paramount dispute-settlement technique, but, in fact, the only available one. In this posture we think that this appeal is properly to be resolved in light of the principles enunciated in our due process decisions that delimit rights of defendants compelled to litigate their differences in the judicial forum.

401 U.S. at 376–77, 91 S.Ct. at 785, 28 L.Ed.2d at 118.

**10.** *See Public Defender Agency v. Superior Court,* 534 P.2d 947 (Alaska 1975), where we held that the Attorney General may enforce support orders.

If a parent takes a child under age 12 from the person having lawful custody of the child, without that person's consent, he has committed the criminal offense of child stealing. AS 11.15.290.

**11.** *Horton v. Horton,* 519 P.2d 1131, 1132 (Alaska 1974); reiterated in *Horutz v. Horutz,* 560 P.2d 397, 399 (Alaska 1977); *Lacy v. Lacy,* 553 P.2d 928, 929 (Alaska 1976).

**12.** We emphasize that our holding in this opinion is limited to cases involving child custody where an indigent party's opponent is represented by counsel provided by a public agency.

**13.** *Aleut Corporation v. McGarvey,* 573 P.2d 473 (Alaska 1978); *Borden v. Borden,* 277 A.2d 89 (D.C.1971); *see Estep v. Johnson,* 383 F.Supp. 1323 (D.Conn.1974).

access to files, supervision, and physical separation of offices which would be sufficient to ensure that two attorneys employed by ALSC could represent conflicting positions in litigation, each having undivided loyalty to his client and fully able to exercise that independent professional judgment which is required by the Code of Professional Responsibility.[14] However, there now exist no such regulations and without them ALSC cannot realistically be considered as a source of légal representation.

Both parties contend that the Public Defender Agency has the statutory obligation to furnish counsel in this case. Their argument is that AS 18.85.100(a) requires the public defender to represent "[a]n indigent person who . . . is entitled to representation under the Supreme Court Rules of Children's Procedure . . ." and that Children's Rule 15(a)(3) requires the appointment of counsel in the present circumstances. It provides:

The court shall appoint counsel to represent the child, his parents, guardian, or custodian, when the assistance of counsel is desired, as follows:

(3) For his parents . . . when they are financially unable to employ counsel to represent themselves and the issues are complex or have serious consequences.

■ We do not believe that Children's Rule 15(a) was intended to apply to divorce proceedings. The scope of the Children's Rules is defined in Rule 1(b) which provides: "The procedure in children's matters shall be governed by these rules." The term "children's matters" is not further defined. However, reference is made throughout the rules to ch. 10, Title 47 of the Alaska Statutes, which deals exclusively with cases where the state as a party has

chosen to interfere with a parent's right of custody, either in a delinquency proceeding, or where a violation of law by the child is alleged, or in a dependency proceeding where a child may need protection. None of the rules is cross-referenced to Title 9 of the Alaska Statutes which governs child custody proceedings in divorce cases, and none of the rules refer to child custody proceedings in divorce cases. Light is cast upon the intended coverage of the Children's Rules by Rule 12 which defines the appropriate subjects of inquiry involved at "the child hearing." Those subjects are, "whether the child is delinquent, dependent, delinquent and dependent, or in need of supervision." For these reasons we conclude that the Children's Rules of Procedure are inapplicable to this case and cannot furnish a basis for imposing a duty of representation on the Public Defender Agency. In reaching this conclusion, we recognize that in several of our cases involving private parties we have referred to various provisions in the Children's Rules.[15] However, in each of those cases, the citation was given to support an analogous procedure adopted in the case in question; we did not hold that the Children's Rules were directly applicable.

Having eliminated ALSC and the Public Defender Agency as present sources of representation, only the private bar remains.[16] Counsel should be appointed from the private bar.

BURKE, J., not participating.

CONNOR, Justice, dissenting in part, concurring in part.

The majority holds today that our due process clause guarantees indigent civil litigants the right to counsel at public expense

---

14. We encourage such an effort.

15. The decisions are *Reynolds v. Kimmons,* 569 P.2d 799, 802 n. 10 (Alaska 1977); *Veazey v. Veazey,* 560 P.2d 382, 385 (Alaska 1977); *Johnson v. Johnson,* 544 P.2d 65, 72 n. 16 (Alaska 1975); *Carle v. Carle,* 503 P.2d 1050, 1053 n. 5 (Alaska 1972); *Sheridan v. Sheridan,* 466 P.2d 821, 825 n. 16 (Alaska 1970).

16. Administrative Rule 15.1 provides for compensation of attorneys appointed by the court to represent persons "under the Rules of Children's Procedure or pursuant to statute . . ." at the rate of forty dollars per hour. That rule is broad enough to permit compensation in cases such as the present one where the appointment of counsel is constitutionally required.

898

whenever "[t]he interest at stake . . . is one of the most fundamental of all civil liberties, the right to direct the upbringing of one's child." While I agree that in this case the petitioner, because of the extreme disadvantage to which she is put, should have counsel appointed for her from some source, there are a number of reasons why I am unable to join my colleagues in holding that all indigent child custody litigants are constitutionally entitled to counsel at public expense.

I can find no authoritative precedent, state or federal, to firmly support such an extension of due process rights. In *Boddie v. Connecticut*, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), the court merely struck down court fees and service of process fees that effectively denied access to the state courts to indigents seeking divorce. While the court did note the importance of the "basic position of the marriage relationship in this society's hierarchy of values,"[1] the key factor in the decision appears to have been the state monopolization of the means for legally dissolving the marriage relationship.[2] Since a legal divorce in Connecticut could *only* be obtained through the courts, filing fees which significantly impeded indigents' access to those courts and which did not serve a "countervailing state interest of overriding significance"[3] were held to violate due process. In reaching this decision, the majority in *Boddie* carefully avoided any suggestion that the right to counsel was mandated in such cases. Here it is worth noting that, unlike the circumstances presented in *Boddie*, child custody litigants are not compelled to go to court to settle their claims.

*Cleaver v. Wilcox*, 499 F.2d 940 (9th Cir. 1974), which the majority relies upon in the case at bar, was concerned with child dependency proceedings in which the state of California was a party. The excerpted language from that case which appears in the majority opinion here was uttered only in

regard to such dependency proceedings. Moreover, the court in *Cleaver* did not establish a firm constitutional rule requiring court-appointed counsel in every dependency proceeding; rather, it established general guidelines to be applied on a case by case basis.[4]

Similarly, our previous decisions in this area do not require that counsel be provided to indigent civil litigants in private child custody proceedings. In *Otton v. Zaborac*, 525 P.2d 537 (Alaska 1974), we held that an indigent in a contempt proceeding, for non-support of his child, had a constitutional right to a court-appointed attorney, stating:

> We base this decision on the right to jury trial in a contempt proceeding for non-payment of child support recognized in *Johansen v. State*, 491 P.2d 759 (Alaska 1971), and on the underlying rationale of that decision which focuses on the very real threat of incarceration. [footnote omitted].

*Otton, supra* at 538.

In explaining why the need for assistance of counsel was deemed greater when a jury trial was involved, we quoted the concurring opinion of Mr. Justice Powell in *Argersinger v. Hamlin*, 407 U.S. 25, 45–46, 92 S.Ct. 2006, 2016–17, 32 L.Ed.2d 530, 543 (1972):

> An unskilled layman may be able to [represent] himself in a nonjury trial before a judge experienced in piecing together unassembled facts, but before a jury the guiding hand of counsel is needed to marshal the evidence into a coherent whole consistent with the best case on behalf of the [litigant].

*Otton, supra* at 540.

In a later case, *Reynolds v. Kimmons*, 569 P.2d 799 (Alaska 1977), we extended the right to counsel to an indigent defendant in a paternity suit brought by the state on behalf of the mother. In reaching that result, we relied heavily on the fact that in

1. *Boddie v. Connecticut, supra*, 401 U.S. at 374, 91 S.Ct. at 784, 28 L.Ed.2d at 116.

2. *Id.*

3. *Id.* 401 U.S. at 377, 91 S.Ct. at 785, 28 L.Ed.2d at 118.

4. *Cleaver v. Wilcox, supra*, at 945.

such proceedings defendants suffer serious exposure to criminal liability.[5] We also noted that any resultant paternity and support decree would be likely to have a major impact on the defendant's life and would be *res judicata* in later contempt proceedings that could result in incarceration.[6] Furthermore, we reasoned that the need for counsel was heightened because the defendant was being prosecuted by the state with all of its resources and power.[7] The *Reynolds* decision, therefore, was not simply based on the significance of the parent-child relationship, but was founded on other important factors as well.

Notwithstanding this absence of authoritative precedent, I am particularly troubled by the failure of the majority to give full consideration to those procedural aspects of private child custody proceedings which help to insure that even unrepresented litigants will have a full, fair opportunity to be heard.

First, as in any case, the court itself may call, question, and cross-examine witnesses in an effort to determine the best interests of the child. In this regard it is noteworthy that a Divorce Reform Task Force report of the National Council on Family Relations has recommended that child custody determinations should no longer be a product of adversarial proceedings. See, 1 Family Law Reporter 2026 (1974). Although the report does not specify any alternative procedures, its conclusion suggests that it may be preferable to leave the examination of witnesses in such proceedings solely to the province of the judge, thereby diminishing some of the adversarial aspects of these hearings.

Second, the Alaska legislature has, by statute, provided for the appointment of counsel to represent children who are the subject of private custody proceedings. AS 09.65.130. These attorneys, in fulfilling their obligations to their clients, must call, examine, and cross-examine witnesses for both sides and make appropriate evidentia-

ry objections. This, too, helps to insure that the strength and weaknesses of each opposing side will be fully and properly aired even without the assistance of counsel.

Finally, unlike other types of civil litigation, there is no right to a jury trial in private child custody proceedings. The determination of the best interest of the child is made solely by the court. AS 25.20.060. Thus, as implied in *Otton, supra*, there is no special need for "the guiding hand of counsel . . . to marshal the evidence into a coherent whole" for a jury; rather, the judge, experienced in piecing together unassembled facts, is capable of fully evaluating the evidence in favor of, and against, both sides.

In light of these considerations, I believe there is no sound basis for concluding that a private child custody litigant cannot be provided with a meaningful opportunity to be heard without the assistance of counsel. On the contrary, certain procedural aspects of child custody proceedings—the exclusive fact-finding role of the judge and independent counsel for the children—support the view that unrepresented child custody litigants may actually be afforded more due process "protection" than other private civil litigants, threatened with deprivation of other important rights, who do not have an attorney.

This brings me to a third troubling aspect of today's holding, namely, the extent to which the majority's reasoning, applied with basic notions of equal protection, logically requires counsel for other indigents in private litigation involving other rights. There, too, complex and emotional issues may be involved, along with important state interests in the outcome. These factors, the majority opinion suggests, enhance the need for assistance of counsel, and this would be especially true where the fact-finding role is delegated to a jury, as it often would be in other cases. *See, Otton, supra* at 540. Thus, I am unable to see

**5.** *Reynolds v. Kimmons, supra*, at 802.

**6.** *Id.*

**7.** *Id.* at 803.

how, logically, this court will be able to limit its holding today, consonant with equal protection, to deny appointed counsel to other indigent persons involved in such private civil litigation.[8] This point was made by Chief Judge Breitel in a related case, *In the Matter of Smiley*, 36 N.Y.2d 433, 369 N.Y.S.2d 87, 330 N.E.2d 53, 57 (1975), where the New York Court held that there was no constitutional right to counsel in divorce cases:

> It merits added comment that among the many kinds of private litigation which may drastically affect indigent litigants, matrimonial litigation is but one. Eviction from homes, revocation of licenses affecting one's livelihood, mortgage foreclosures, repossession of important assets purchased on credit, and any litigation which may result in the garnishment of income may be significant and ruinous for an otherwise indigent litigant. In short, the problem is not peculiar to matrimonial litigation. The horizon does not stop at matrimonial or any other species of private litigation.[9] [footnote added]

Finally, there is another aspect of the court's decision which requires comment, and that is the cost to the public. Whether we place responsibility on the private bar or the state treasury, the cost ultimately will be borne by the public. Even if the initial burden were cast upon the private bar, the expense of providing counsel for indigent civil litigants eventually would be paid for from some other source. So far as I know, we lack reliable data on the legal needs of the poor in civil cases in Alaska and the expense of meeting those needs. Without such information, it seems to me hazardous to create an inflexible constitutional right, the impact of which we can only vaguely discern. In this regard, I think it unfortunate that the state has not been heard before the court takes this major constitutional step, as the state has an obvious interest in the ramifications of this decision.

For these reasons, I would hold that the petitioner is not entitled to counsel as a matter of constitutional right, but rather is entitled to appointed counsel in the discretion of the court.[10]

---

8. The majority opinion expresses the belief that a "public agency" supplied Mr. Flores with counsel in this case. I disagree. The Alaska Legal Services Corporation is a non-profit enterprise organized pursuant to 42 U.S.C. § 2996b, which established the national Legal Services Corporation. It is clear that the national Legal Services Corporation is not an agency of the federal government, nor are its staff members federal employees. 42 U.S.C. § 2996c(c); 42 U.S.C. § 2996d(e)(1). *Spokane County Legal Services, Inc. v. Legal Services Corporation*, 433 F.Supp. 278, 280 (E.D.Wash. 1977). In my view, the Alaska Legal Services Corporation is a private corporation and not an agency of the state or federal government. Therefore, I conclude that a "public agency," in the sense of being an agency of the government, did not provide Mr. Flores with counsel in this case.

9. *See also* the opinion of Mr. Justice Black, dissenting from a denial of a petition for certiorari in *Meltzer v. C. Buck LeCraw & Co.*, 402 U.S. 954, 91 S.Ct. 1624, 29 L.Ed.2d 124 (1971).

10. It should be noted that AS 25.30.100(c) grants the superior court authority to order "another party" to pay "travel and other necessary expenses" of an out-of-state party if this would be "just and proper under the circumstances."