v.

**STATE of Alaska, Appellee.**

No. 7072.

Supreme Court of Alaska.

June 17, 1983.

---

Robert B. Downes, Cole & Downes, Fairbanks, for appellant.

Niesje J. Steinkruger, Asst. Atty. Gen., Fairbanks, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Mary E. Greene, Asst. Public Defender, Fairbanks, Dana Fabe, Public Defender, Anchorage, for guardian ad litem.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

COMPTON, Justice.

This is an appeal brought by V.F. from an order of the superior court terminating her parental rights as to her four minor daughters, H.F., D.F., R.F. and M.B. V.F. contends that the judgment should be reversed because she did not have the effective assistance of counsel during the proceedings. For the reasons set forth below, we hold that parents have a constitutional right to the effective assistance of counsel in proceedings brought to terminate their parental rights. We conclude, however,

that V.F. was not deprived of this right and we therefore affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Over the past ten years, V.F. has demonstrated that she has serious problems in providing proper care for her four children; it is unnecessary for the purposes of this appeal to recite in detail the nature of these problems. The most recent state intervention began in December 1980, when the state petitioned the superior court for a Temporary Placement Hearing. As a result of this hearing, V.F.'s four children were committed to the custody of the Department of Health and Social Services. The three older children, then eleven, eight and six years of age, have remained in foster care since that time. The youngest child, then an infant, has been placed in the custody of her natural father.

The Department of Health and Social Services filed a Petition for Adjudication of Children in Need of Aid, and on January 9, 1981, Daniel Saluri was appointed by the court to represent V.F. in the proceeding. On March 31, 1981, the court ordered the parties to comply with a comprehensive stipulation they had entered into, by which V.F. agreed to perform certain acts before custody of the children would be returned to her. In view of V.F.'s previous problems, the stipulation specifically noted that unless significant progress was made by V.F., the department would seek termination of her parental rights.

V.F. failed to comply with the provisions of the stipulation, and on March 22, 1982, the department filed a Petition for Termination of Parental Rights. The hearing on the petition was held from June 28 to July 1, 1982. On July 30, 1982, the superior court entered its order terminating V.F.'s parental rights. V.F. appeals from this order.

## II. EFFECTIVE ASSISTANCE OF COUNSEL

V.F. contends that she was denied the effective assistance of counsel during the proceedings to terminate her parental rights. Before turning to an examination of the facts in this case, it is first necessary to determine whether a right to the effective assistance of counsel exists in proceedings for the termination of parental rights.

■ The parties do not contest a parent's right to counsel in proceedings brought to terminate his or her parental rights. Alaska Children's Rule 15 provides in relevant part as follows:

(a) *When the Court Shall Appoint Counsel.* The court shall appoint counsel to represent the child, his parents, guardian, or custodian, when the assistance of counsel is desired, as follows:

. . . .

(3) For his parents, guardian, or custodian when they are financially unable to employ counsel to represent themselves and the issues are complex or have serious consequences.

There can be no doubt that proceedings for the termination of parental rights present issues of "serious consequences."

Furthermore, V.F. is an "Indian" within the meaning of the Indian Child Welfare Act of 1978, 25 U.S.C. § 1903(3) (1976). The Indian Child Welfare Act specifically provides indigent Indian parents the right to counsel in proceedings brought to terminate their parental rights: "In any case in which the court determines indigency, the parent or Indian custodian shall have the right to court-appointed counsel in any removal, placement, or termination proceeding." 25 U.S.C. § 1912(b) (1976).

■ Finally, we believe it is apparent from our decision in *Flores v. Flores,* 598 P.2d 893 (Alaska 1979), that the due process clause of the Alaska Constitution[1] guarantees the right to counsel in proceedings brought to terminate parental rights.[2] In

---

**1.** Article I, section 7, of the Alaska Constitution provides in part as follows: "No person shall be deprived of life, liberty, or property, without due process of law."

**2.** The right to counsel guaranteed by the sixth amendment to the United States Constitution, and made applicable to states by the fourteenth amendment, is specifically limited to criminal

*Flores,* we held that the due process clause of the Alaska Constitution guarantees an indigent parent the right to court-appointed counsel in a private child custody proceeding in which the opposing party was represented by counsel provided by a public agency. We stated, "The interest at stake ... is one of the most basic of all civil liberties, the right to direct the upbringing of one's child. This right has consistently been recognized by the United States Supreme Court as being among the 'liberties' protected by the due process clause of the Federal Constitution." *Id.* at 895 (footnote and citations omitted). We quoted with approval the following passage from *Cleaver v. Wilcox,* 499 F.2d 940, 945 (9th Cir. 1974): "[D]ue process requires the state to appoint counsel whenever an indigent parent, unable to present his or her case properly, faces a substantial possibility of the loss of custody or of prolonged separation from a child." 598 P.2d at 895. The rationale for our decision in *Flores* is even more compelling in this case; a proceeding for the termination of parental rights affects a parent's right to direct the upbringing of his or her child even more than does a private child custody proceeding. We accordingly hold that the due process clause of the Alaska Constitution guarantees indigent parents the right to court-appointed counsel in proceedings for the termination of parental rights.[3]

In accordance with these authorities, Daniel Saluri was appointed as V.F.'s counsel in January of 1981. He represented V.F. throughout the proceedings concerning her children, including the proceeding for the termination of her parental rights.

The issue contested by the parties is whether there is a right to the *effective assistance* of counsel in proceedings brought for the termination of parental rights. It might be that this right is impliedly conferred by Children's Rule 15 and 25 U.S.C. § 1912(b), but none of the parties has made this argument. It is clear, however, that whenever the right to counsel is constitutionally guaranteed in a particular proceeding, the effective assistance of counsel is also constitutionally required. *E.g., McMann v. Richardson,* 397 U.S. 759, 771 & n. 14, 90 S.Ct. 1441, 1449 & n. 14, 25 L.Ed.2d 763, 773 & n. 14 (1970); *Reece v. Georgia,* 350 U.S. 85, 90, 76 S.Ct. 167, 170, 100 L.Ed. 77, 83 (1955); *Risher v. State,* 523 P.2d 421, 425 (Alaska 1974); *Crews v. State,* 358 So.2d 451, 455 (Ala.Civ.App.1978). We therefore agree with V.F. that she had a constitutional right to the effective assistance of counsel in the proceeding brought to terminate her parental rights.[4]

### III. APPLICATION IN THIS CASE

A review of the facts of this case, however, indicates that V.F. was not deprived of the effective assistance of counsel. In

prosecutions: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel guaranteed by article I, section 11, of the Alaska Constitution is similarly limited: "The accused is entitled ... to have the assistance of counsel for his defense."

The right to counsel in certain civil proceedings arises from the due process clause of either the United States or the Alaska Constitution. *See, e.g., Reynolds v. Kimmons,* 569 P.2d 799 (Alaska 1977) (paternity suits); *Otton v. Zaborac,* 525 P.2d 537 (Alaska 1974) (civil contempt proceedings).

**3.** The United States Supreme Court has recently held in *Lassiter v. Department of Social Services,* 452 U.S. 18, 31–32, 101 S.Ct. 2153, 2161–2162, 68 L.Ed.2d 640, 652 (1981), that

indigent parents do not have an automatic right to counsel under the United States Constitution in proceedings brought to terminate their parental rights. Our decision, however, is in accordance with the growing number of jurisdictions which have held that the right to counsel in termination proceedings exists under the state constitution. *See,* Annot., 80 A.L.R.3d 1141 (1977) ("Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights") (enumerating 15 states that have adopted this rule).

**4.** Accordingly, we need not determine whether all rules and statutes conferring the right to counsel also impliedly confer the right to the effective assistance of counsel. It is conceivable that the two rights are not co-extensive.

*Risher v. State,* we announced the following standard by which to determine whether a party has been denied effective assistance of counsel:

> Before reversal will result, there must first be a finding that counsel's conduct either generally throughout the trial or in one or more specific instances did not conform to the standard of competence which we have enunciated. Secondly, there must be a showing that the lack of competency contributed to the conviction. If the first burden has been met, all that is required additionally is to create a reasonable doubt that the incompetence contributed to the outcome.

523 P.2d at 425 (footnote omitted). We stated the following standard of competency:

> Lawyers may display a wide spectrum of ability and still have their performance fall within the range of competence displayed by one of ordinary training and skill in the [particular area of] law. It is only when the ability is below the nadir of that range that we would hold it to constitute a deprivation of effective assistance of counsel.... All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the ... law, regardless of the outcome of such decisions.

523 P.2d at 424. V.F.'s argument that she did not receive the effective assistance of counsel rests upon three basic contentions: (1) she was unaware until shortly before the hearing that Saluri was her attorney, rather than guardian ad litem for her children; (2) Saluri failed to argue that the proceeding should have been governed by the Indian Child Welfare Act; and (3) Saluri failed to call a particular witness who arguably could have established that V.F. can now provide a good, stable environment for her children.

These contentions will be addressed in order.

### A. *Awareness that Counsel Had Been Appointed*

V.F. contends that she did not know that Saluri had been appointed as her attorney, and instead believed that he had been appointed as guardian ad litem for the children. V.F. had been in contact with another attorney, Mr. Griffin, to whom she had paid a retainer. She contends that she believed Griffin was going to represent her at the hearing. The evidence before us, however, establishes that V.F. understood that Saluri was representing her in these proceedings at a point in time sufficiently before the hearing to provide V.F. with the effective assistance of counsel.

It is clear that Griffin indicated to V.F. at least a month before the termination hearing that he would not be able to represent her at the hearing and advised her to "get another lawyer ... or to continue with the lawyer she had." Soon after Saluri was appointed to represent V.F. in January 1981, V.F. was informed of the appointment. She was also informed that separate counsel had been appointed as guardian ad litem for the children.

 In January 1981, Saluri consulted with V.F. regarding a thirty-day extension of the temporary custody order. When V.F. entered into the stipulation with the Department of Health and Social Services, it was announced in court that Saluri was her attorney. The stipulation, of which V.F. was given a copy, bears Saluri's signature as V.F.'s attorney and recites in its opening paragraph that Saluri is her attorney. V.F. informed Griffin that Saluri was her attorney. Finally, she met with Saluri in June 1982 to prepare for the hearing, she participated with him in the presentation of her case, and she brought in witnesses for Saluri to examine on her behalf. On the basis of these facts, we conclude that V.F. knew sufficiently prior to the time of the hearing that Saluri was her attorney.[5]

---

**5.** It is apparent from the record that V.F. wished to retain other counsel. The right to the effective assistance of counsel does not extend, however, to the right to reject appointed counsel and have new counsel appointed in the absence of any showing of cause for such

### B. Failure to Argue Applicability of Act

■ V.F. next contends that she was denied the effective assistance of counsel because her attorney did not argue that the Indian Child Welfare Act was applicable to the proceedings and did not appear to be aware of the implications of the Act. We agree with the guardian ad litem of the children, that this failing, assuming it to be true, could not have contributed to the outcome of the hearing. It is therefore not a cause for reversal of the judgment, in accordance with the standard we enunciated in *Risher v. State,* 523 P.2d at 425.

It is unclear whether the Act is applicable to three of the minor children, because they possess only one-eighth Indian blood; the fourth child is one-quarter Native. Assuming, however, that the Act were held to be applicable, it differs from state law on termination proceedings, *see* AS 47.10.-080(c)(3), in only three relevant respects: (1) the Indian child's tribe has a right to intervene in the action (25 U.S.C. § 1911(c)) and a right to receive notice of the action (25 U.S.C. § 1912(a)); (2) proof must be presented of remedial services that have been offered and not been successful (25 U.S.C. § 1912(d)); and (3) a determination "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses" must be made that continued custody of the child by the parent is likely to result in "serious emotional or physical damage to the child" (25 U.S.C. § 1912(f)). All of these requirements were met in this case.

First, notice was sent to and duly received by the Bureau of Indian Affairs, the appropriate Native association, and the appropriate Indian Tribe. Second, the court was presented with extensive evidence of remedial services that were offered and were not successful. Finally, the superior court applied the "beyond a reasonable doubt" standard, which was supported by the testimony of qualified expert witnesses.

One of the witnesses relied upon by the state had been the director of the social services program at the Fairbanks Native Association for two years; three other witnesses either were or had been working for the same association. Thus, four of the fourteen witnesses relied upon had extensive experience with Native families. We accordingly hold that V.F. was not denied the effective assistance of counsel because of the alleged failure of her attorney to argue that the Indian Child Welfare Act should have been applied to the termination hearing.

### C. Failure to Call a Witness

■ V.F.'s last argument is that her counsel should have called her boyfriend, J.C., as a witness because his testimony arguably would have established that she is now able to provide a good, stable environment for her children. Evidence regarding J.C. was presented to the court; V.F. testified as to her relationship with him and their joint preparations to care for the children. V.F.'s attorney indicated at the hearing that he had attempted to secure J.C.'s presence, but was unable to do so. It would appear that either V.F. did not inform J.C. of the importance she placed upon his appearance at the hearing, or J.C. nonetheless chose not to appear. It is a strategic decision whether or not to subpoena a reluctant witness and we cannot say that Saluri's decision fell outside of the "range of reasonable actions which might have been taken by an attorney skilled in the ... law." *Risher v. State,* 523 P.2d at 424. *See also Coleman v. State,* 621 P.2d 869, 879–80 (Alaska 1980); *Gaona v. State,* 630 P.2d 534, 538 (Alaska App.1981). We thus conclude that the failure to call J.C. as a witness at the hearing did not deny V.F. the effective assistance of counsel.

### IV. CONCLUSION

We hold that the due process clause of the Alaska Constitution guarantees indi-

---

change. Analogous to the holding of the United States Supreme Court in *Morris v. Slappy,* —— U.S. ——, ——, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610, 621 (1983), we hold that the due

process clause of the Alaska Constitution does not guarantee a "meaningful relationship" between client and his appointed counsel.

gent parents a right to the effective assistance of counsel in proceedings brought to terminate their parental rights. We conclude, however, that V.F. was not deprived of this right and we accordingly affirm the judgment of the superior court terminating her parental rights.

AFFIRMED.

CONNOR, J., not participating.